## THE ST. LOUIS BRIDGE COMPANY

### v.

### EMORY MILLER.

*Personal Injuries—Bridge Company—Negligence of—Failure to Provide Guard Rail—Proximate Cause—Examination by Physicians—Contributory Negligence—Evidence—Instructions.*

1. Where the evidence in a given case is conflicting, it is for the jury to give the weight and credit to that introduced by each party, which they believe it is entitled to.

2. In an action brought to recover from a bridge company for personal injuries alleged to have occurred through its negligence, this court holds that the evidence justified the jury in finding that the plaintiff was seriously and permanently injured by frightened mules running against her and pressing her against the outer railing of its bridge; that she was in the exercise of reasonable care for her own safety when injured; that the negligence of the defendant in failing to provide reasonably safe and secure barriers to prevent live stock from crossing into the foot-way, or in the absence of such barriers, failing to establish and enforce rules for securing and controlling live stock while being driven across the bridge, occasioned the injury to plaintiff; that the trial court properly denied a motion on behalf of the defendant that plaintiff be required to submit to a bodily examination by physicians; that the point advanced by the defendant that its negligence was not the proximate cause of the injury is not tenable; and declines to interfere with the judgment in her behalf.

[Opinion filed February 2, 1891.]

St. Louis Bridge Co. v. Miller.

APPEAL from the Circuit Court of St. Clair County; the Hon. B. R. BURROUGHS, Judge, presiding.

Messrs. G. & G. A. KOERNER, for appellant.

In overruling the motion to have the plaintiff examined by physicians appointed by the court, there was surely error.

The injuries claimed to have been sustained by the plaintiff are not of a character to be apparent; there was no loss of limb or disfigurement, which could be perceived.

The plaintiff claims a positive injury to the spine, resulting in nervous disorders and weakness of eye-sight. Admitting, for argument's sake, the right to recover, the question of the existence of these disorders and their extent, if they exist at all, becomes a most prominent question in the case.

Is it consistent with justice that these questions should be left altogether to the testimony of the plaintiff and those whom she chooses to bring forward as witnesses, or is the defendant and is the court entitled to the light which an impartial and scientific examination of the person of the plaintiff could throw upon this inquiry?

It is shown by the bill of exceptions that the defendant proposed to have an examination of the person of the plaintiff made by persons skilled in medical science, and the plaintiff refused to allow such examination. Defendant then moved the court for a rule upon the plaintiff to submit her person to such an examination for the purpose of having the testimony of the experts on the trial as to the extent or the permanency of the injury she claims to have received.

The court denied the motion and we assign this refusal for error.

On the trial the plaintiff, when on the witness-stand, was asked whether she was now willing to submit to an examination by surgeons to be appointed by the court; she again refused.

The court as well as the parties are entitled to the best evidence obtainable. And if it is in the power of one of the parties to furnish evidence and he refuses to do so, that fact is taken against him and he will be compelled to furnish such

evidence.    1 Greenleaf on Ev., Sec. 37 and 82;  City of Frank-
fort v. Isbell, 93 Ill. 382;  2 Bishop on Marriage and Divorce,
Sec. 590, and  notes;  R.  R.   Co. v. Hinlayson, 18 A. & E. R.
R. Cases, 68;  R.  R.  Co.  v.  Holland, 122 Ill. 467;  Walsh v.
Sayre, 52 How. ˙ 334;  R.  R.  Co.  v.  Thul, 10 A. &  E. R. R.
Cases, 783.

The power of the court to order such examination ıs ad-
mitted in all of these cases.    But the best considered case and
one adopted as authority in many of the  cases above cited,
is the case of Schroeder v. R. R. Co., 47 Ia. 375.    We quote
from it:

" Whoever is a party to an action in a court   *   *   *   has
a right to demand therein the administration of exact justice.
This right can only be secured and  fully respected by obtain-
ing the exact and full truth touching all matters in issue in
the action.    If truth be hidden, injustice will  be done.    The
right of the suitor then, to demand the  whole truth, is un-
questioned; it is the correlation of the right to exact justice.
It is true, indeed, that on account of the imperfection incident
to human nature perfect truth may not always be obtained,
and it is well understood that exact justice, because of the
inability of courts to obtain truth in entire falsehoods, can
not be always administered.    We are often compelled to
accept approximate justice as the best that the courts can do
in the administration of the law.    But, while the law is satis-
fied with approximate justice when exact justice can not be
obtained, the court should recognize no rules which stop at
the first when the second is in reach."    *    *    *

" To our minds the proposition is plain, that a proper exam-
ination by learned and skillful physicians would have opened
a road by which the court could have been conducted nearer
to exact justice than in any other way.    The plaintiff, as it
were, had under his control testimony which would have re-
vealed the truth more clearly than any other that could have
been introduced.    The course of truth, the right administra-
tion of the law, demand that he should have produced it."

The court in that case in its opinion fully discuss the objec-
tions against such a proceeding urged by the plaintiff and con-

St. Louis Bridge Co. v. Miller.

clude by holding that in cases of this character it is not only proper but it is the duty of the court to order an examination, when requested by the defense, for the purpose of ascertaining the nature, character, extent and permanency of the injury complained of.

The court below refused the motion on the authority of Parker v. Enslow, 102 Ill. 272.

It will be observed, on examination of that case, that the court would not have been justified in ordering a physical examination. It was an action *ex contractu*, and the question was as to whether the note sued on was given for a good consideration.

The note had been given in settlement of a claim for damages for a personal injury, and whether the injury was a severe one or not, permanent or not, did not arise.

The law which controlled that decision was that if the parties in good faith compromised what was supposed by the plaintiff a good cause of action, plaintiff could recover on the note given in settlement.

The court, therefore, evidently paid but little attention to the question of physical examination. It dismissed the subject with these words: " Complaint is also made that the court refused to compel appellee to submit his eyes to the examination of a physician in the presence of the jury. There was no error in this. The court had no power to make or enforce such an order."

As to the power of the court to enforce such an order and the manner of enforcing it, we refer again to the case of Schroeder v. Railroad Co., above cited.

The power of making the order is upheld by the court in cases prior and subsequent to case in 102. Frankfort v. Isbell, 93 Ill. 382; R. R. Co. v. Holland, 122 Ill. 467.

Are we not, in the light of these decisions, justified in calling the reference to this question an *obiter dictum* not called for by the question controlling that case and made without examination of the authorities?

Messrs. BAKER & CANBY, for appellee.

It is assigned for error, the court below refused to order appellee to submit her person to a medical examination by physicians appointed by the court. This the court had no power to do. The authorities are not in harmony on this point. In some States it is held the trial court may do this, and in others not. Our Supreme Court has denied the power. Parker v. Enslow, 102 Ill. 272.

There is no pretense in the affidavit, made in support of this motion, that plaintiff was feigning an injury she had not received, and there is nothing in the evidence or circumstances to justify it.

See on this point, City of Galesburg v. Benedict, 22 Ill. App. 114.

In R. R. Co. v. Holland, 122 Ill., the point was not decided, as the physicians named in the motion had been allowed to make an examination of plaintiff before the trial, and the error, if any, in overruling the motion, was held to be a harmless one.

All that is decided in 93 Ill. is, that it was the duty of the court to permit the refusal of plaintiff to submit to an examination to be shown to the jury, so that they might give it such weight as its importance deserved, and this was allowed in this case. An examination made at the time of the trial would not have disclosed any external evidence of the injury. It is an injury to the spine, internal in its character, and affecting the nervous system in various ways, such as incontinence of urine, impairment of the organs of vision, and other nervous disorders attendant upon a spinal injury, of which we complain in this case. It would have been quite easy, no doubt, for appellant to have got a committee of physicians and surgeons, like Dr. Kohl, in the employ of railroad corporations, to make an examination of appellee, and then testify there was in their opinion nothing the matter with her. The physicians who waited upon her immediately after and since the injury and who have had an opportunity from time to time to observe the effects produced upon her system thereby, are better qualified to speak upon this subject than others who might be appointed to make a hasty and necessarily imperfect examination. If the injuries complained of

were external in their character, such as a bruise or wound, the nature and extent of which could be readily discovered by an examination, there would be some reason for asking that one be made; but where the injury is internal and hidden, there is certainly no ground for making such an examination, as it would not reveal the injury complained of. It can only be known by observing its effects and consequences upon the system from time to time as they develop.

GREEN, J. Appellee brought this suit against appellant to recover damages for personal injuries received by her on the approach of appellant's bridge. The negligence charged in plaintiff's declaration is, in substance, the failure to provide a guard rail, balustrade or other barrier between the footway used by pedestrians crossing upon the bridge and the roadway provided and used for the passage of teams, wagons and live stock over the bridge; and in the third count it is averred that by reason of the absence of such guards, rails or bannisters it became and was the duty of defendant, in the exercise of ordinary care, to make and enforce such rules and regulations for the passage of animals and live stock across said bridge as would reasonably protect and secure persons crossing the bridge on foot from injury from such animals and live stock while being driven across the bridge; charges neglect of this duty, and it is averred in each count that by reason of the negligence of the defendant as charged therein, a drove of loose mules, permitted by defendant to be driven across said bridge, ran against and upon plaintiff, and pressed and squeezed her so violently against the north railing of the approach as to greatly bruise and injure her, and thereby her nervous system was greatly shocked and permanently injured and her spine permanently injured, her right eye hurt, etc. The trial resulted in a verdict for the plaintiff for $1,800 damages, and defendant appealed. The first point suggested on behalf of appellant is, that the verdict is against the evidence. It is not denied that appellee paid her fare for crossing said bridge from St. Louis to East St. Louis and had proceeded on foot, upon the footway provided, as far as midway of the north approach at the east end of the bridge, at a point twenty-five

feet above the ground; that a drove of not less than twenty-five mules, which had passed her, became frightened at a locomotive, turned and ran back, one at least running into the footway where she then stood; that the south approach was closed for repairs; that there was no rail or other barrier between the roadway and footway on the north approach to prevent the mules from crossing into the footway where appellee stood. In addition to the uncontradicted facts, appellee testified she was returning from St. Louis to her home in East St. Louis, across the bridge; that she paid her fare for crossing, and while on the footway, about the middle of said north approach, a drove of mules that had just passed her going down the approach, became frightened and stampeded and turned and ran up the approach toward her, and three or four of them crossed into the footway, where she stood clinging to the outside railing, ran against her and squeezed and crushed her against the railing, and thereby her side and back were injured, her eyesight became impaired and her kidneys were affected; that she remained at times unconscious during three or four days after the accident and was confined to her bed for two weeks by reason of her injuries; that her health had been bad since the accident and she had been unable to do her housework; that she had been healthy and her eyesight was good before her injury. The testimony of the physician attending her tended to strongly corroborate her statement touching her condition and injuries, and he further testified her injury would permanently affect her nervous system. A consulting physician, who examined her shortly after the accident, concurred with the attending physician in his diagnosis and also corroborated appellee in material points as to the character and consequences of her injury.

Dr. Perryman testified he knew the plaintiff; that from her statement on the stand and the testimony of her physician, his opinion was that she had concussion of the spinal cord and of the back; that if the concussion of the spinal cord is serious it may be permanent; if slight it may pass away in a short time, but it is liable to leave behind it a train of nervous disorders that may lead to serious troubles afterward. Two

St. Louis Bridge Co. v. Miller.

boarders in plaintiff's house, who saw her every day, corroborate her as to her condition on the evening of her injury, and for three or four days thereafter, and as to the time she was confined to her bed, and testify to the fact that she had repeated spells of prostration and sickness thereafter, and before her injury was a strong, healthy woman.   Two ladies testified also and corroborated plaintiff in material points, and the girl who worked for plaintiff testified substantially as the two boarders did.   As against this evidence, Bogue, who was one hundred yards from plaintiff when the mules stampeded and came back, testified he saw them run back up the approach and saw them pass plaintiff; did not think they ran into or against her.  Galvin, a bus driver, who was also about one hundred yards from place where plaintiff stood, and who was on his omnibus driving west when the mules stampeded, testified he saw the mules run past her, but they did not touch her   Each of these witnesses admitted one of the mules, at least, got over into the footway.   Young, a bridge watchman, testified he was on the turn roadway that goes down under the bridge to the levee, and Bogue called his attention and informed him the mules had stampeded and there was a lady on the approach; that he went up to plaintiff and as far as he could see she was conscious; she might have been unconscious; if she was he could not see it; she said she was frightened; said she was subject to heart disease and expected to go home and be sick for two weeks; did not claim that the mules ran against her; he walked with her down the approach.   Dr. Kohl heard plaintiff's testimony and that of the physicians on her behalf and did not agree with them that plaintiff had suffered concussion of the spine and gave his reasons for his opinion.   It was the province of the jury to settle this conflicting testimony and give the weight and credit to the evidence introduced on behalf of each party, which they believed it was entitled to.   Doubtless they took into consideration the distance Bogue and Galvin were from plaintiff, the means and opportunity each had to see and know whether plaintiff was run into by the mules as she claimed, also her mental and physical condition immediately afterward and continuing for

so long a time, referable to no other apparent cause than the injury received in the manner she described, and reached the conclusion they were mistaken and she was not. The jury saw and heard all the witnesses while testifying and had means thus furnished them, which we have not, to determine correctly the credibility of each and the weight their testimony was entitled to.

We think, after carefully examining the record in this case, the evidence justified the jury in finding that appellee was seriously and permanently injured by the frightened mules running against her and pressing her against the outside railing, where she had retreated to avoid them and save herself from injury; that she was in the exercise of all reasonable care for her own safety when injured, and the negligence of defendant in failing to provide reasonably safe and secure barriers to prevent live stock from crossing into the footway, or, in the absence of such barriers, failing to establish and enforce rules for securing and controlling live stock while being driven across the bridge, occasioned the injury and damage to plaintiff. It is next insisted the trial court erred in denying this motion on behalf of the defendant: "Now comes the defendant and moves the court for a rule upon the plaintiff to submit to an examination of her person by medical experts for the purpose of hearing the evidence on the trial of the cause as to the extent or the permanency of the injury she claims to have received." This motion names no persons as medical experts nor does it ask the court to name and appoint the medical experts; but aside from this the necessity for such examination does not appear. It is not suggested in the affidavit filed in support of the motion that such examination is required in order to more fully ascertain the extent and probable duration of the injury; nor does it appear there is reason to believe plaintiff feigned or simulated injuries. The only external evidence of injury was a bump or swelling on the back, which yielded to the remedies used and disappeared in a short time, and the change in the appearance of the pupils of the eyes, claimed to have taken place after the injury. We do not deem this error well

St. Louis Bridge Co. v. Miller.

assigned. Galesburg v. Benedict, 22 Ill. App. 114; Parker v. Enslow, 102 Ill. 272.

It is next insisted the injury was caused by want of care on the part of the persons in charge of the mules, and the negligence of defendant in failing to provide reasonably safe and sufficient railing or other barrier between the roadway and footway to protect pedestrians, was not the proximate cause of plaintiff's injury, hence defendant is not liable to her. This contention is not tenable under the rule announced in Village of Carterville v. Cook, 129 Ill. 152.

The fourth point suggested is, that plaintiff knew the approaches were not properly constructed, by reason of having no high railing between the footpath and roadway, and that therefore it was dangerous for foot-passengers; that this was a manifest danger, known to her, because she had crossed the bridge many times, and this known danger she could have avoided by using a street car or ferry boat, or a stair-case at the approach, which plaintiff testified she knew nothing of. No accident occurred to plaintiff, or to any one else to her knowledge, except the one in question here, by reason of the absence of the rail or barrier. The bridge company invited foot-passengers to use this footway by keeping it open for their use. It took toll of plaintiff, who was a foot-passenger; she had a right to rely on their legal obligation to use reasonable care in protecting her from injury while crossing the bridge, or respond in damages for injury occasioned by failure to perform such duty. The use by plaintiff of the footway upon the approach, under the facts disclosed by the record, was not contributory negligence on her part in bringing about her injury, or absolving defendant from liability. Fifth point is, that the want of a railing separating the sidewalk from the roadway is not negligence *per se*. It is not necessary to an affirmance of this judgment that we should hold such omission negligence *per se*. The question before the jury was, whether, under all the facts and circumstances proven, it was negligence, creating liability, for defendant in this case to omit the erection of such railing. The jury evidently found it was, and the proof justified the finding. The

last point suggested is the giving certain instructions for plaintiff, and refusing to give certain instructions requested on behalf of defendant. The ruling of the Circuit Court in this regard is assigned for error. An examination of the evidence and all the instructions given and refused, leads us to the conclusion that the jury were fully and fairly instructed by the court, and that the refused instructions ought not to have been given.

No error requiring the reversal of the judgment appearing to us, it is affirmed.

*Judgment affirmed.*